UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADDIE SALTER,

       Plaintiff,

                            Case No.: 05-CV-71146-DT

vs.

                            HON. ARTHUR J. TARNOW
                            MAG. JUDGE WALLACE CAPEL, JR.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant,
_____/

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff signed his application for DIB on November 8, 1999,[1] alleging that he has been disabled and unable to work since June 24,

---

[1] His application is dated December 18, 1999, at the top of the page, and his "Disability Determination and Transmittal" form has a filing date of January 9, 1999. (TR 45-46, 64-66).

1998,[2] due to "strong tension head acks [sic] and anxiety." (TR 64-66, 70). Benefits were denied initially on April 12, 1999, and again upon reconsideration on August 4, 1999. (TR 47-50, 53-54). A de novo hearing was held on October 6, 2000,[3] before Administrative Law Judge [ALJ] William J. Musseman. (TR 192). In a decision dated October 27, 2000, the ALJ found that Plaintiff did not have any severe impairments. (TR 192-96). Accordingly, Plaintiff was found not disabled. Upon request by Plaintiff, the Appeals Council vacated the previous decision and issued an Order of Remand on June 18, 2002, pursuant to 20 C.F.R. § 404.977. (TR 207-08).

Another hearing was conducted by the same ALJ on December 3, 2002. (TR 267-86). In a decision dated March 6, 2003, the ALJ found that Plaintiff could perform a limited range of light work. (TR 16-26). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on January 28, 2005. (TR 6-8). The Plaintiff has commenced this action for judicial review.

### A. PLAINTIFF'S TESTIMONY

Plaintiff testified that he was born on November 6, 1951, and was fifty-one at the time of the hearing. (TR 271). He stated that he was five foot, five inches tall, and weighed one hundred and thirty-five pounds, which is a normal weight for him. Id. He stated that he is right-handed, and divorced with no dependent children. (TR 271, 276).

---

[2] This is the date Plaintiff reported on his application; however, he reported on his Disability Report that he became unable to work May 27, 1998. (TR 70).

[3] It is noted that an August 10, 2000, hearing is also referenced within the decision; (TR 194) however, confirmation of the hearing date is impossible because the tapes from same were lost. (TR 207-08).

Plaintiff reported that he completed the twelfth grade and can read and write. (TR 271-72). He stated that he did not pursue any further education after high school and did not serve in the military. (TR 272). Plaintiff testified that he worked as an inspector until the department was eliminated. Id. He stated that he was required to "do so many pieces per week by packaging." Id. He stated that he could sit or stand while he did the job and the parts were small. Id. He stated that he did the job for two weeks and it was the last time he was employed. (TR 273).

He explained that he stopped working due to depression. Id. He also reported problems with his right shoulder, but has had surgery performed on same. Id. He stated that the surgery occurred in November of 2000. (TR 280). Additionally, he stated that he has some pain in his neck and lower back. (TR 274). Plaintiff testified that he has not been hospitalized since his surgery. (TR 280).

The ALJ began asking Plaintiff about his depression and anxiety symptoms. (TR 274). Plaintiff stated that as it relates to his social life, he visits with his oldest daughter on and off as well as a few friends. Id. He stated that he also goes to church on a regular basis. Id. He reported trouble concentrating and paying attention to what he is doing and his mind wanders. (TR 274-75). Plaintiff explained that he has difficulty reading and cannot concentrate on a book, magazine, or newspaper for more than a few minutes, rather he just scans through it. (TR 275). He stated that his depression and anxiety put him in "slow motion" as it relates to household tasks such as the cooking, cleaning, and vacuuming. Id.

Plaintiff testified that he has difficulty sleeping and sometimes only sleeps for three to four hours and then wakes up, but overall it fluctuates. (TR 275-76). He reported that he takes half-hour naps during the day at differing times. (TR 276).

Plaintiff testified that he is still having pain, which "moves" in his shoulder as well as up through his neck since his surgery. Id. He explained that before the surgery he has "a real severe pain," but "most of the pain went away. But the pain now that comes, it's a moving pain instead of a one place [sic]." Id. Plaintiff stated that on a scale of one to ten, with ten necessitating hospitalization, his pain is a seven or an eight, which is less severe than prior to the surgery. (TR 276-77). Although he stated that he has neck pain, he stated that he does not receive treatment or medication for same. (TR 277). Additionally, he stated that he is not on any medications for his lower back. Id.

Plaintiff indicated that he is still treating with Dr. Rao for his depression and anxiety. Id. He reported that "every now and then" he gets panic attacks. Id. He indicated that they occur once a year for an hour or less. (TR 278).

He stated that he can sit comfortably for "[m]aybe an hour," stand about fifteen minutes, walk "about a block," and he cannot lift, per Dr. Awerbuch's restrictions, anything heavier than ten pounds because of his shoulder. (TR 278). Plaintiff stated that he can care for his personal needs including bathing and dressing. Id. He reported that he has cut off all hobbies and recreational activities. Id. He stated that he used to play basketball and golf. (TR 279). He stated that he does not have to do any yard work because he lives in an apartment complex. Id.

He testified that he has a driver's license with restrictions for eyeglasses. Id. He reported that he drives every other day to the restaurant or grocery shopping. Id. He stated that he is currently receiving total and permanent disability from General Motors [GM]. Id. He stated that he is not receiving worker's compensation; rather, he received a settlement for same in the amount

of fifteen thousand dollars. (TR 280). He stated that his pension from GM is one thousand and nine hundred dollars a month. Id.

### B. MEDICAL EVIDENCE

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[4]

### C. VOCATIONAL EXPERT'S TESTIMONY

Judith Katherine Findora, a vocational expert [VE], testified at the hearing. (TR 281-85). The ALJ asked the VE to assume a claimant with Plaintiff's age, education, and work experience and to further assume he was "[l]imited to an exertional level and a full range of light. With non-exertional limitations of no over chest level work, no push-pull with the dominant right upper extremity, no assembly line type constant usage of the dominant right upper extremity." (TR 282). The VE testified that under such a hypothetical the claimant would not be able to return to his past relevant work. Id.

The ALJ asked whether there would be other jobs compatible with the aforementioned limitations. Id. The VE testified in response that the following positions were available: cashier, 40,000 positions; security, 10,700 positions; and childcare worker, 2,800 positions. Id. The VE asked whether he should continue listing other positions. Id. The ALJ answered in the negative. Id. The VE stated that his testimony was consistent with the Dictionary of Occupational Titles [DOT]. (TR 282-83).

---

[4]See Subpart E, supra.

The ALJ added the following limitations to the original hypothetical: "inability to be productive up to 75 percent of the time." (TR 283). The VE testified in response that there would be no positions available with the additional restriction. Id.

Plaintiff's counsel questioned the VE. (TR 283-85). The VE stated that the need to nap a half-hour a day at unpredictable times due to depression and lack of sleep from pain would preclude all employment. (TR 283). Plaintiff's counsel showed the VE Exhibit 13F at (TR 264). (TR 283). The VE stated that the limitations within same would preclude the jobs listed. Id. The VE testified that the limitations would be better suited to a sedentary job with the lifting limitations and a sit/stand option. Id. Plaintiff's counsel inquired as to whether the jobs previously listed were reduced range. Id. The VE stated that the cashier position was reduced range from 61,740 because of the "pushing-pulling with the right." (TR 284). The VE stated that the other positions did not require any pushing with the dominant right extremity. Id. The VE testified that the childcare position involved daycare with small children. Id. The VE stated that although emergencies could occur that "have to use force or exertion to hold back [a] child or pick up children," as stated by Plaintiff's counsel, would be rare. Id. The VE stated that it was a light job that involved "a latchkey type of situation where the children are older," five-year-olds and up. (TR 284-85).

### D.   ALJ'S CONCLUSIONS

#### 1.   October 27, 2000, Decision

After reviewing the testimony presented at the hearing and the medical evidence in the record, ALJ Musseman found that although he suffers from depression, "the claimant does not have a severe impairment." (TR 195). Therefore, ALJ Musseman concluded that Plaintiff was not disabled at Step Two and ineligible for DIB. (TR 195-96).

### 2.     March 6, 2003, Decision

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "[t]he medical evidence indicates that the claimant has the medically determinable impairment of right shoulder impingement syndrome status-post November 2000 decompression surgery and a Mumford procedure with a thermal capsular shift," but he does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. (TR 20, 24-25). The ALJ found Plaintiff's allegations regarding his limitations are not totally credible. (TR 22, 25). He determined that Plaintiff had the residual functional capacity [RFC] to perform a limited range of light work. (TR 23-24, 25). Therefore, the ALJ concluded that Plaintiff is not eligible for DIB. (TR 26).

### E.     ANALYSIS

Plaintiff advances one claim in his Motion for Summary Judgment. His Motion argues that the ALJ's decision is not supported by substantial record evidence because the Commissioner erred in posing a hypothetical to the VE that does not accurately reflect Plaintiff's impairments.[5] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[6] The matter is now ready for decision.

---

[5] Plaintiff's Motion for Summary Judgment and Brief filed August 8, 2005 (hereinafter "Plaintiff's Brief"), at pages 7-12.

[6] Defendant's Motion for Summary Judgment and Brief filed September 9, 2005 (hereinafter "Defendant's Brief"), at pages 11-17.

### 1. **Standard of Review**

The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

### a. **Improper Hypothetical**

Plaintiff argues that the Commissioner erred as a matter of law by forming an inaccurate hypothetical that did not accurately describe his impairments.[7] Plaintiff relies on the reports of Drs. Date, Rao, and Fine to support his arguments, and he argues that the ALJ should have found a severe mental impairment.[8]

---

[7] Plaintiff's Brief at pages 7-12.

[8] Plaintiff's Brief at pages 9 and 11.

Plaintiff argues that Dr. Fine's Mental Residual Capacity Assessment and Psychiatric Review Technique Form was not properly integrated into the hypothetical.[9] Specifically, Plaintiff argues that

> on April 2, 1999 [Dr. fine] found "moderate" "difficulties in maintaining social functioning." Dr. Fine also determined that Mr. Salter would "often" suffer "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)." (Tr. 132)
> On that same date, Dr. Fine filled out a Mental Residual Functional Capacity Assessment form and determined Mr. Salter was "moderately limited" in the following areas:
>     1. The ability to understand and remember detailed instructions;
>     2. The ability to carry out detailed instructions;
>     3. The ability to maintain attention and concentration for extended periods; and
>     4. The ability to interact appropriately with the general public.
> (Tr. 134-135)

Id. Plaintiff argues that an ALJ must set forth a hypothetical that sufficiently describes the impact of Dr. Fine's finding that he often had difficulties with concentration.[10]

However, the ALJ found that Plaintiff's depression was not severe and he did not suffer from a mental impairment. (TR 20). The ALJ specifically stated that "[t]he severity of the claimant's mental impairment is measured by assessing functional limitations using the four criteria in paragraph B of the listings: activities of daily living; social functioning, concentration, persistence or pace; and episodes of decompensation, each of extended duration (defined as at least two weeks)." Id. However, in terms of his analysis of the third factor (concentration, persistence, or pace), the ALJ did not note Dr. Fine's findings. (TR 21).

---

[9]Plaintiff's Brief at page 9.

[10]Plaintiff's Brief at pages 9-12.

In fact, in both of his decisions the ALJ failed to acknowledge the Psychiatric Review Technique and the Mental Residual Functional Capacity Assessment forms completed by Dr. Fine. (TR 125-36).  Rather, in his most recent decision, the ALJ found that "[t]he evidence reflects that the claimant lives independently.  He prepares his own meals, watches several hours of television daily and is quite involved with his church.  The evidence in totality leads to a finding that the claimant has mild limitations in concentration, persistence or pace." Id.  The ALJ later added that "[t]he claimant testified that he has sufficient concentration to watch up to six hours of television daily."  (TR 22).

In Edwards v. Barnhart, 383 F.Supp.2d 920, 929 (E.D.Mich. 2005) (Hon. Friedman, B. A.), the district court noted the ALJ made similar comments regarding television viewing as it relates to an ability to concentrate.  The district court held that "***[t]he ALJ's argument that Plaintiff's daily watching of television is not sufficient evidence on this record to conclude her concentration is not significantly impaired. Thus, the ALJ's hypothetical question is insufficient.***" Id. (emphasis added).[11]

---

[11]The undersigned recognizes "district judges in this circuit must not treat decisions by other district judges, in this and a fortiori in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits." TMF Tool Co., Inc. v. Muller,  913 F.2d 1185, 1191 (7th Cir. 1990) (quoting Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1124 (7th Cir.1987) (emphasis in original)).  See also Liebisch v. Sec'y of Health and Human Servs.,  21 F.3d 428, 1994 WL 108957, *2 (6th Cir. Ohio 1994) ("District Court opinions have persuasive value only and are not binding as a matter of law.") (unpublished disposition; Table).

Nonetheless, the problem begins with whether the ALJ should have found that Plaintiff's depression was a "severe" impairment. Plaintiff challenges that in fact it should have been found to be "severe."[12]

> [A]n impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."

Farris v. Sec'y of Health and Human Servs., 773 F.2d 85, 90 (6th Cir. 1985). Thus, it is necessary to examine the evidence before the ALJ of Plaintiff's alleged depression.

Defendant argues that Plaintiff only submitted a report done by Dr. Roa in January 1999 and no other treatment records from same. (TR 140-48).[13] However, Plaintiff did submit treatment records, albeit illegible, from same dated January 12, 1999, to December 2, 1999. (TR 169-74). The ALJ acknowledged treatment between December 1998 and July 1999. (TR 20). The ALJ also acknowledged that "Psychologist Date offered a diagnosis of a major depressive disorder and an anxiety disorder." Id.

Plaintiff notes that "[o]n January 26, 1999, Dr. Rao gave the diagnoses of Major Depression, recurrent and gave a Global Assessment of Functioning [GAF] score of 50, which indicates 'serious symptoms OR any serious impairment in social, occupational, or school functioning.' DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION, TEXT REVISION (2000), p. 34."[14] The undersigned is aware that the diagnosis of an impairment

---

[12]Plaintiff's Brief at page 11.

[13]Defendant's Brief at page 15.

[14]Plaintiff's Brief at page 9.

11

is not indicative of the severity of same. As in <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988), the Court stated, "[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition. <u>Foster v. Bowen</u>, 853 F.2d 483, 489 (6th Cir. 1988) (diagnosable impairment not necessarily disabling)." Again, as it relates to the GAF score by Dr. Rao, Plaintiff fails to develop the argument.

Nonetheless, in assessing the weight that the ALJ gave to these findings by the physicians of record, he carefully scrutinized Dr. Awerbuch's opinion which dealt with physical impairments, but failed to assess Dr. Rao's altogether, which dealt with mental impairments. (TR 22). Further, the ALJ noted that "[t]he State Agency determinations have not been given significant weight in light of the considerable amount of additional evidence that has been obtained." <u>Id.</u>

The regulations clearly state that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." 20 CFR § 404.1527(d). The factors include: treatment relationship, examining relationship, support ability, consistency, specialization, and other information about the source provided by the claimant. 20 CFR § 404.1527(d)(1)-(6).

Thus, he apparently disregarded the finding he discussed of Dr. Date and Dr. Fine's opinion within the Psychiatric Review Technique and Mental Residual Capacity Assessment forms, which he failed to mention altogether. (TR 125-36). However, Dr.s Rao, Date, and Fines' opinions and findings are consistent with each other.

Meaningful appellate review is impossible as it relates to Dr. Fine's opinion because the ALJ failed to mention it at all; thus, there is no way to know whether it was actually reviewed at that time. Further, although the ALJ did discuss Dr. Date's findings regarding the diagnosis of

depression, he never mentioned that "[h]e recalled one of out [sic] three objects three minutes later," in terms of recent memory while he did mention positive results regarding immediate memory. (TR 120). Although an ALJ is not required to discuss each and every piece of evidence, he or she "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision." Young v. Comm'r of Soc. Sec., 351 F.Supp.2d 644, 649 (E.D. Mich. 2004). This is precisely what the ALJ meant in terms of Dr. Date's report. He discussed it in detail, yet left out specific information which would support a concentration problem.

Thus, the ALJ failed to properly assess Dr.s Rao, Date, and Fines' diagnosis relating to depression and any related concentration difficulties that may have been necessary in forming a proper hypothetical.

Plaintiff also specifically argues that Dr. Fine indicted "[a] GAF score of 58 indicates 'moderate symptoms OR moderate difficulty in social, occupational, or school functioning.' DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION, TEXT REVISION (2000), p. 34."[15] The undersigned recognizes that "[t]he GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." 65 FR 50746, 50764 -50765.

Nonetheless, Plaintiff develops no argument regarding same in concrete terms relating to Plaintiff's RFC or specific limitations that should have been included in the ALJ's hypothetical. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument

---

[15]Plaintiff's Brief at page 9.

in the most skeletal way, leaving the court to....put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

Further, the ALJ did note the Plaintiff's GAF in both his decision and discussion of Dr. Date's findings, (TR 20); and, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC standing alone, does not make the RFC inaccurate." Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).  Thus, due to Plaintiff's failure to develop the issue and the lack of any obvious error regarding same, the ALJ's decision regarding the GAF scores was not improper.

### 2.    **Remand Versus Benefits**

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff.  It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec. of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted).  More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Unfortunately, the ALJ's adverse decision was deprived of substantial evidentiary support because he failed to evaluate all the evidence of record relating to Plaintiff's alleged depression and related concentration difficulties.  This case should be remanded to allow the ALJ to evaluate the other evidence of record and form a proper hypothetical reflecting same.  There still may be positions with such restrictions available; therefore, a remand for benefits would be premature.

### III. CONCLUSION

For the reasons stated, I recommend that the Court **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case for proceedings consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.


s/Wallace Capel, Jr.
**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**Dated:**   January 31, 2006

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: James Brunson, Assistant United States Attorney, 101 First Street, Suite 200, Flint, Michigan 48708, and Mikel E. Lupisella, 1121 N. Michigan Avenue, Saginaw, Michigan 48602-5369.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606 .

                 s/James P. Peltier
                 United States District Court
                 Flint, Michigan 48502
                 810-341-7850
                 E-mail: pete_peltier@mied.uscourts.gov